# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 6, 2013 Session

## LARRY BURCHFIELD ET AL. v. TIMOTHY J. RENFREE, M.D.

**Appeal from the Circuit Court for Knox County**
**No. 2-412-08     Harold Wimberly, Judge**

---

**No. E2012-01582-COA-R3-CV-FILED-OCTOBER 18, 2013**

---

This is a health care liability action wherein the trial by jury resulted in a judgment for the Defendant, Dr. Timothy Renfree. Plaintiffs, Larry and Dinnie Burchfield, filed this lawsuit against Dr. Renfree alleging that he negligently performed surgery on Mr. Burchfield's right arm and caused nerve damage. After the jury returned its verdict in favor of Dr. Renfree, the Burchfields filed post-trial motions seeking relief from the judgment and alleging numerous errors in the administration of the trial. The trial court denied the post-trial motions and affirmed the jury's verdict as thirteenth juror. The Burchfields appealed. We vacate the jury's verdict, finding reversible error in the administration of the trial, and remand this matter to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Loring Justice and B. Chadwick Rickman, Knoxville, Tennessee, for the appellants, Larry and Dinnie Burchfield.

James H. London, Libba Bond, and R. Scott Durham, Knoxville, Tennessee, for the appellee, Timothy J. Renfree, M.D.

## OPINION

### I. Factual and Procedural Background

Larry Burchfield and his wife, Dinnie Burchfield, filed suit against Dr. Timothy

Renfree regarding carpal tunnel release surgery that was performed on Mr. Burchfield's left arm on August 23, 2007, and on his right arm on November 28, 2007. The Burchfields alleged various causes of action, including negligence pursuant to the health care liability act, medical battery, misrepresentation, and fraud. The Burchfields claimed that during the surgery on Mr. Burchfield's right arm, Dr. Renfree negligently severed the median nerve, causing permanent injury. The Burchfields also alleged that both surgeries lacked Mr. Burchfield's informed consent. Dinnie Burchfield's claim for damages alleged lack of consortium.

A jury trial was conducted September 19-30, 2011. At the close of the Burchfields' case-in-chief, the court granted a directed verdict on their claims of battery, fraud/misrepresentation, and punitive damages. The jury deliberated for two days following conclusion of the proof, returning with a verdict in favor of Dr. Renfree. The Burchfields filed post-trial motions pursuant to Tennessee Rule of Civil Procedure 59 in November 2011. The trial court orally denied the motions on March 28, 2012. The Burchfields filed a motion seeking entry of an order on their post-trial motions on July 2, 2012, asserting that there had been an unreasonable delay in the entry of an appealable order. The trial court subsequently entered an order denying the post-trial motions on July 9, 2012. The Burchfields timely appealed the trial court's decision.

## II. Issues Presented

The Burchfields present numerous issues for our review. We have generally incorporated the Burchfields' format in presenting the issues, while slightly restating them as follows:

1.   Whether rules related to the integrity of the proceedings were violated warranting a new trial.

   A.   Whether a new trial is warranted because of the court's *ex parte* communications with the jury.

   B.   Whether a new trial is warranted because of the court's *ex parte* communications with defense counsel.

   C.   Whether a new trial is warranted because of defense counsel's contact with the husband of a seated juror.

   D.   Whether a new trial is warranted because it appears that the court allowed defense counsel to change the court's

ruling.

E.      Whether a new trial is warranted because of the court's disparagement of counsel and other injudicious conduct.

F.      Whether a new trial is warranted because the court implied it would give a cautionary instruction to the jury regarding its disparagement of the Burchfields' counsel but failed to do so.

G.      Whether a new trial is warranted because of the court's undue delay in addressing post-trial motions and failing to address some motions altogether.

H.      Whether a new trial is warranted because the court subjected the Burchfields to unnecessary expense to punish them for exercising their discovery rights regarding Dr. Renfree's experts.

I.      Whether a new trial is warranted because defense counsel removed and lost documents from the medical file of Edward Workman, M.D. and the court did not address this motion.

2.      Whether the court failed to properly give jury instructions and erred by failing to approve any verdict form, leaving the jury without one.

A.      Whether a new trial is warranted because the court failed to acknowledge or instruct the jury on medical *res ipsa loquitur*.

B.      Whether a new trial is warranted because the trial court failed to properly read Tennessee Pattern Jury Instructions - Civil 6.25, regarding informed consent.

C.      Whether a new trial is warranted because the court refused to give the jury its instructions in writing.

D.      Whether a new trial is warranted because the court refused to give the Burchfields' requested jury

instructions, though the court implied it would give them and never denied the request for same.

E. Whether a new trial is warranted because the court, without notice, gave a misleading jury instruction which no one requested.

F. Whether a new trial is warranted because the court refused to give the jury any verdict form, despite the fact that both parties proposed a form.

G. Whether a new trial is warranted because the trial court created its own set of jury instructions with no notice as to what its charge would be.

3. Whether the trial court abused its discretion regarding key evidence.

A. Whether a new trial is warranted because the court failed to allow evidence that Dr. Renfree stopped performing Endoscopic Carpal Tunnel Release in May 2008.

B. Whether a new trial is warranted because the court granted Dr. Renfree's motion for a protective order quashing a proof deposition of Dr. James Calandruccio, who was retained as an expert by the defense but subsequently "withdrawn" after a deposition favorable to the Burchfields.

C. Whether a new trial is warranted because the court failed to allow the Burchfields due process in discovering the basis and validity of the psychological testing done by the offices of defense psychologist Dr. Spica and interpreted by defense psychiatrist Dr. Alexander.

D. Whether a new trial is warranted because the court severely limited cross-examination and disparately ruled on evidentiary and testimonial issues in a manner disproportionately favorable to Dr. Renfree.

E. Whether a new trial is warranted because the court failed

in its gatekeeping obligation and disparaged Supreme Court case law.

    F.    Whether a new trial is warranted because the court failed to exclude the unreliable expert opinions of Dr. Spica and Dr. Alexander.

    G.    Whether a new trial is warranted because the trial court previously informed the Burchfields it would exclude all speculative causes of injury pursuant to *Hunter v. Ura*.

    H.    Whether a new trial is warranted because the court failed to exclude the testimony of Dr. Lorio, particularly when it appeared that Dr. Lorio charged a contingency fee.

4.    Whether the trial court abused its discretion and made errors in administering the case and trial.

    A.    Whether a new trial is warranted because the court's thirty minute limitation on the cross-examination of Dr. Renfree was improper, in light of this Court's precedent in *Mayo v. Shine*.

    B.    Whether a new trial is warranted because the court improperly restricted discovery deposition time and failed to extend the time limits and allow further examination, even when the need for such was evident.

5.    Whether a new trial is warranted because of the trial court's hostility to discovery.

6.    Whether a new trial is warranted because the verdict is against the weight of the evidence.

7.    Whether a new trial is warranted because the court erred in granting directed verdicts on the Burchfields' claims for battery and punitive damages and failed to instruct on the non-dismissed, extant claims of fraud and misrepresentation.

8.    Whether the Burchfields are entitled to judgment as a matter of law on

the issues of battery and medical negligence given the undisputed evidence that the surgical consent forms were false in many respects and the only competent evidence was that the knife cut Mr. Burchfield's median nerve, with the experts agreeing that any cut to the nerve in that location during this surgery is medical negligence.

### III. Standard of Review

The trial court's rulings regarding admissibility of evidence are reviewed under an abuse of discretion standard, and may only be overturned if the discretion is arbitrarily exercised or abused. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263-64 (Tenn. 1997). Similarly, decisions regarding pretrial discovery are inherently discretionary and are reviewed under an abuse of discretion standard. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

When reviewing the trial court's decision on a motion for a directed verdict, this Court "must take the strongest legitimate view of the evidence in favor of the opponent, draw all reasonable inferences therefrom in his favor, discard all countervailing evidence and deny the motion if there is any doubt to be drawn from the whole evidence. A verdict should be directed only when reasonable minds could draw but one conclusion." *Solomon v. First Am. Nat. Bank of Nashville*, 774 S.W.2d 935, 940 (Tenn. Ct. App. 1989).

Generally speaking, if there is any material evidence to support the jury's verdict, it must be affirmed. *Crabtree Masonry Co., Inc. v. C & R Const., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978). This Court has "a duty to uphold a jury's verdict whenever possible. In doing so, we must give effect to the jury's intention, as long as that intention is permissible under the law and ascertainable from the phraseology of the verdict." *Grandstaff v. Hawks*, 36 S.W.3d 482, 497 (Tenn. Ct. App. 2000) (internal citations omitted). The question of whether the court's jury instructions were proper is a question of law, which this Court reviews *de novo* with no presumption of correctness. *Solomon,* 774 S.W.2d at 940. This Court must review the jury charge in its entirety and determine if it fairly defined the legal issues involved and did not mislead the jury. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992). We must also abide by Tennessee Rule of Appellate Procedure 36(b), which states:

A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process. When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for

a new trial or assigned as error on appeal.

## IV. Errors in Administration of the Case and Trial

We begin our analysis with the Burchfields' fourth issue regarding errors in the administration of the trial, as the inquiry is primarily dispositive of the outcome of this appeal.

### A. Time Limit on Cross-Examination of Defendant

The Burchfields assert that the trial court improperly limited their cross-examination of Dr. Renfree during trial to thirty minutes. In support of their motion, the Burchfields rely principally upon this Court's recent opinion in *Mayo v. Shine*, 392 S.W.3d 61 (Tenn. Ct. App. 2012). We agree.

In *Mayo*, the trial court limited cross-examination of the defendant physician to only thirty minutes because the plaintiff chose to exhibit portions of the videotaped deposition of the defendant physician to the jury during the plaintiff's case-in-chief. *See* 392 S.W.3d at 68. This Court noted that, "[a]pparently the Trial Court's reason for imposing this limitation of thirty additional minutes was that portions of Dr. Shine's deposition presented in Plaintiff's case-in-chief covered the same areas Dr. Shine was being questioned about on cross-examination." *Id.* This Court found that the trial court's action was error, stating in part:

> Plaintiff had the right to adduce from Dr. Shine on cross-examination "any information that may clarify, qualify, or undercut [Dr. Shine's] testimony on direct examination, impair its effectiveness, or affect the inferences the trier-of-fact might draw," within reasonable limits.
>
> Dr. Shine is a party defendant in a complex medical malpractice action, and it was unreasonable given the facts and circumstances of the case to set the limit of an additional thirty minutes on Plaintiff's cross-examination of Dr. Shine. The fact that Plaintiff had introduced portions of Dr. Shine's videotaped deposition during her case-in-chief was immaterial. The cross-examination of a witness, especially a witness who is a party to the lawsuit, is not the same thing as presenting a portion of that witness's deposition in the case-in-chief. Cross-examination of a party witness serves a very different purpose from that of introducing evidence in a party's case-in-chief. The primary purpose of a plaintiff's cross-examination of a party defendant is not to prove the elements of the plaintiff's cause of action, but rather to "clarify, qualify, or undercut [the

party defendant's] testimony on direct examination, impair its effectiveness, or affect the inferences the trier-of-fact might draw."

Our careful and thorough review of the record on appeal reveals no valid reason for so severely limiting Plaintiff's cross-examination of Dr. Shine in the manner that the Trial Court did. Given the complexity of this trial and the complex factual issues that were being placed before the jury, the Trial Court's limitations on the cross-examination of Dr. Shine simply were not necessary "to prevent obstruction of the orderly progress of [this] trial." We, therefore, hold that it was error to limit Plaintiff's cross-examination of Dr. Shine in the manner and extent that the Trial Court did.

*Id*. (quoting *Overstreet v. Shoney's, Inc*., 4 S.W.3d 694, 708-709 (Tenn. Ct. App. 1999)).

Similarly, in this case, where the trial court limited the Burchfields' cross-examination of Dr. Renfree to thirty minutes because they chose to play portions of Dr. Renfree's video-taped deposition for the jury during their case-in-chief, we find this to be error. This action is likewise a complex medical malpractice case, and Dr. Renfree is a party defendant. As explained above, cross-examination serves a much different purpose than the presentation of proof in the case-in-chief, and the Burchfields should not have been thwarted in their efforts to "clarify, qualify, or undercut [the party defendant's] testimony on direct examination, impair its effectiveness, or affect the inferences the trier-of-fact might draw." *Id*. Combined with other errors discussed in this opinion, we find that this error resulted in the Burchfields being denied a fair trial. We conclude that the trial court erred in limiting the cross-examination of Dr. Renfree in this manner and, therefore, vacate the trial court's judgment due to this finding of reversible error.

### B. Time Limit on Discovery Depositions

The Burchfields also assert that it was error for the trial court to place a specific time limit on depositions during discovery. Dr. Renfree states that he requested of the court such a limitation after the Burchfields' counsel allegedly deposed Dr. Renfree's damages expert for over seven hours. In ruling on the respective motion, the judge stated that he had read prior depositions, and found that the Burchfields' counsel was "asking things over and over and just wandering around." The court thus limited all future depositions to four hours. Dr. Renfree asserts that this was an appropriate limitation to prevent abuse of the discovery process.

Tennessee Rule of Civil Procedure 26.03 states that a party or other person from whom discovery is sought may ask for an order to protect them from "annoyance,

embarrassment, oppression, or undue burden or expense" upon a showing of good cause. Such an order may include "that the discovery may be had only on specified terms and conditions, including a designation of the time or place." Tenn. R. Civ. P. 26.03 (2). Dr. Renfree sought such an order in this case relating to deposition length. He referenced the fact that depositions previously taken had been excessively long and, in Dr. Renfree's opinion, unduly burdensome because many repetitive questions were asked by the Burchfields' counsel. The trial court reviewed the prior depositions and agreed with defense counsel, limiting all future depositions to four hours. This limitation appears to have been reasonable under the circumstances and was applied in equal fashion to all subsequent depositions, whether scheduled by the Burchfields or Dr. Renfree. We find this to be an appropriate exercise of the trial court's discretion, and find no abuse of that discretion upon the facts shown. *See McDaniel*, 955 S.W.2d at 263-64.

## V. Integrity of the Proceedings

### A. *Ex Parte* Communications Between Judge and Jury

The Burchfields assert that many procedural rules were violated in this case which affected the integrity of the proceedings. First, the Burchfields contend that the trial court engaged in improper *ex parte* communications with the jury. Based on an affidavit of one of the jurors, the Burchfields assert:

a. On September 29, 2011, the jury requested a copy of the sections of the Tennessee Code Annotated relevant to the issues to be decided. This request was denied by the Court.

b. On September 29, 2011, following denial of the above referenced request, the jury requested that relevant sections of the Tennessee Code Annotated be read to the jury a second time. In response to this request, the jury was brought back into the courtroom and sections of the Tennessee Code Annotated were read by the Court.

c. On September 29, 2011, the jury requested that the jury be provided with a timeline demonstrative referenced during trial. The jury was advised that the requested demonstrative was not available to the jury, as it was not made an exhibit during trial.

d. On September 30, 2011, the jury made a written inquiry to the Court regarding whether it was possible to find the Defendant had not committed medical malpractice and still award damages to the Plaintiffs. The jury foreperson

advised the jury that the Court's response to this question was that it was not possible.

The Burchfields represent that they (and their counsel) were neither informed of nor present during the communications referenced in paragraphs (a) and (d), above.[1]  Dr. Renfree likewise states that neither he nor his counsel were present during these communications. The transcript contains no reference to these particular communications.

The Burchfields argue that the allegations contained in paragraphs (a) and (d) of the affidavit demonstrate prohibited *ex parte* communication between the judge and jury. *See Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938 (Tenn. 1994).  The parties and their counsel were not informed or consulted regarding the questions from or responses provided to the jury, and were not present for these communications.  The Burchfields contend that such circumstances raise a question as to whether the judge might have done something improper during these communications, such as making a remark to the foreperson that supplied extraneous information or reflected disparagement toward the Burchfields, which ultimately influenced the verdict.

Our Supreme Court has elucidated the following rule with regard to *ex parte* communications between a judge and jury:

> The analytical framework for determining whether reversal is required in a civil case due to a trial judge's *ex parte* communication with a jury or juror was enunciated in *Guy v. Vieth*, 754 S.W.2d 601 (Tenn. 1988).  In *Guy*, affidavits in support of a motion for new trial were to the effect that during the deliberations, the jurors had informed the bailiff that they had a question. Without the lawyers or a court reporter accompanying him, the trial judge entered the jury room alone, closed the door, and remained in the room for approximately two minutes.  When emerging from the jury room, the trial judge stated that the jury wanted to go to lunch, and the jurors then went to lunch.  After recognizing that some courts consider *ex parte* communications between judge and jury or juror reversible error regardless of prejudice, this Court stated:
>
> > The best position seems to us to be that a trial judge's *ex parte*

---

[1]  The Burchfields state that the court's actions described in paragraphs (b) and (c) were included to show that the trial court knew how to properly address questions from the jury, but failed to do so in every instance.

-10-

> communication with a jury in a civil case does not require
> reversal per se, but reversal is required where a timely
> complaining party shows specific prejudice or where, owing to
> the nature of the *ex parte* communication, the reviewing court
> is unable to determine whether the action was actually harmless.

*Id*. at 605 (emphasis in original). Applying that rule, this Court commented that the *ex parte* communication concerned administrative matters, specifically the excusing of the jury for lunch, but in any event, held that the issue had been waived because no timely objection was entered.

The rule announced in *Guy* remains workable and sound. Moreover, it is re-enforced by Tennessee Rule of Appellate Procedure 36(b) which provides:

> A final judgment from which relief is available and otherwise
> appropriate shall not be set aside unless, considering the whole
> record, error involving a substantial right more probably than
> not affected the judgment or would result in prejudice to the
> judicial process.

Accordingly, the determinative question is whether A-1 Crane demonstrated specific prejudice, either to its substantial rights or to the judicial process. Because of the nature of the communication herein, A-1 Crane, had the opportunity to demonstrate whether or not specific prejudice resulted.

*Spencer*, 880 S.W.2d at 940-41. The Court held that *ex parte* communication between the judge and jury "is always error and should not occur under any circumstances." *Id*. at 941. The Court rejected, however, a *per se* rule of reversal for that error. *Id.*

In the case at bar, there are two alleged instances of improper *ex parte* communications between the court and the jury. First, the jury requested a copy of the sections of the Tennessee Code Annotated relevant to the issues to be decided. This request was denied by the trial court. The juror's affidavit does not state whether the judge actually spoke to the jury foreperson, or whether there was a written request and response. Regardless, no prejudice can be shown as it is clear that allowing the jury to view a copy of the Tennessee Code Annotated in the jury room would have been improper. *See Henson v. State*, 72 S.W. 960 (Tenn. 1903).

The Burchfields contend that this does not end the inquiry, however, because the nature of the *ex parte* communication renders this Court unable to determine whether the

action was actually harmless. In other words, the Burchfields posit that this Court cannot determine from the record whether the judge might have said or done something that influenced the jury in some fashion.

Precedent on this issue leads us to disagree with the Burchfields' contention. In the seminal case of *Guy v. Vieth*, 754 S.W.2d 601 (Tenn. 1988), as explained above, the Supreme Court was faced with the allegation that the trial judge entered the jury room alone, spoke to the jury for approximately two minutes with the door closed, and then emerged, announcing that the jury wished to go to lunch. *Id.* at 601. The trial judge stated that he did not "recall any such entry in the jury room." *Id*. at 602. He further stated that if such an incident did occur, "it was only to excuse the jury for lunch or to take some other break," and that if the door had shut, "it was only momentarily and by accident." *Id.*

The Supreme Court reviewed the allegations, concluding, "every indication is that the communication between the trial judge and the jury concerned administrative matters, that is, the excusing of the jury for lunch." *Id.* The Court ultimately found that by failing to timely object to this communication, the plaintiffs had waived their right to complain. *Id.* The Court's analysis suggests, however, that the Court did not find a reason to question its ability to determine whether the action was actually harmless simply because the judge briefly spoke to the jury alone.

Similarly, in *Spencer*, it was alleged that one of the attorneys observed the judge speaking to the jury foreperson outside the jury room alone. *See* 880 S.W.2d at 939. The judge later disclosed that the foreperson told him the jury wanted to know if they could simply pro rate damages between both defendants. *Id*. at 940. The judge stated that he told the foreperson that the jury could not pro rate damages, but rather had to determine which defendant was liable and assess damages. *Id.* The defendant who was ultimately found to be liable by the jury asserted that this *ex parte* communication constituted reversible error. *Id.*

The Supreme Court concluded that the defendant had the opportunity to demonstrate whether specific prejudice had resulted, but failed to do so. *Spencer*, 880 S.W.2d at 941. The Court reasoned that there was no evidence that this communication (1) tainted the deliberative process of the jury, (2) was even relayed to the jury by the foreperson, or (3) influenced the foreperson individually. *Id.* Again, despite the fact that the judge briefly spoke to the foreperson alone, the Court did not find this to be an issue, and did not speculate regarding what "might" have occurred. *Id.* The Court simply concluded that, having found no evidence of specific prejudice, the error was harmless. *Id*.

Similarly, in the case at bar, the trial court did not prejudice either party by refusing

to allow the jury to take the relevant Tennessee Code Annotated sections into the jury room, as to do so would have been improper. Having found no evidence of specific prejudice, we determine that the trial court's error in having such *ex parte* communications with the jury was harmless and does not constitute reversible error.

The second alleged incident of improper *ex parte* communications occurred when the jury transmitted a written inquiry to the court regarding whether it was possible to find that Dr. Renfree had not committed medical malpractice but still award damages to the Burchfields. The juror's affidavit states that the jury foreperson, after communicating with the trial court, advised the jury that the court's response to this question was in the negative. Again, it is unclear from the affidavit whether the judge's response to the foreperson was written or oral. We find no reference to this incident in the record.

The Burchfields do not take issue with the correctness of the judge's response; rather, their complaint is that during the exchange, the judge could possibly have said or done something that influenced the jury. There is no evidence that anything improper occurred during the exchange between the judge and jury foreperson. Further, there is no evidence that anything other than the judge's response was communicated by the foreperson to the jury. As stated above, while it is correct that the judge should not have undertaken any *ex parte* communication with the jury, such error is harmless in this instance, where the Burchfields have failed to present evidence of any resulting prejudice.

## B. *Ex Parte* Communication Between Judge and Defense Counsel

The Burchfields also allege that on two occasions during the trial, the judge was seen conversing alone with defense counsel, once in the hallway behind the courtroom, and later in the parking area. The Burchfields assert that these *ex parte* communications between the judge and defense counsel constitute a violation of Canon 2 of the Code of Judicial Conduct[2] and warrant a new trial. Dr. Renfree contends that no improper *ex parte* communication occurred, and that the Burchfields' counsel observed the judge and defense counsel having nothing more than "water cooler exchanges" in public.

Tennessee Supreme Court Rule 10, Rule of Judicial Conduct 2.9, states, "A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, **concerning a pending or impending matter** . . . ." (Emphasis added.) Defense counsel posits that there was no discussion of the pending matter and characterizes the conversations as an exchange of "polite pleasantry." The trial judge ostensibly agreed that there was no

---

[2] The Code of Judicial Conduct is codified at Tennessee Supreme Court Rule 10.

-13-

improper communication as he denied the Burchfields' post-trial motion raising the issue.

We do not find reversible error where there has been no showing of prejudice related to these communications. *See State v. Jones,* 735 S.W.2d 803, 810 (Tenn. Crim. App. 1987); *State v. Ramsey*, No. 01C01-9412-CC-00408, 1998 WL 255576 (Tenn. Crim. App. May 19, 1998). As stated in *Jones*, while the trial court's decision to participate in *ex parte* communication might be lacking in judgment, it is harmless error unless there is a showing of prejudice. From a careful examination of the record, there appears no evidence that these conversations concerned the pending case, were witnessed by the jury, or that the jury was influenced in any way. We find this issue to be without merit.

## C. Defense Counsel's Contact with the Husband of a Seated Juror

The Burchfields next assert that during a trial recess, defense counsel "conversed extensively" with the husband of a seated juror and failed to terminate the conversation upon learning of the relationship. Defense counsel explains that he introduced himself to this gentleman, who was sitting in the courtroom at a time when only court officers were present. The Burchfields' counsel was present in the courtroom as well. Defense counsel states that opposing counsel then joined the conversation, which "basically terminated" thereafter.

Our Supreme Court has previously explained that "any unauthorized 'private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury'" will be considered an improper outside influence. *State v. Adams*, No. W2009-01492-SC-R11-CD, 2013 WL 2102683 at *3 (Tenn. May 16, 2013) (quoting *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954)). The Court instructed further that "[a] party challenging the validity of a verdict must produce admissible evidence to make an initial showing that the jury was exposed to extraneous prejudicial information or subjected to an improper outside influence." *Adams*, 2013 WL 2102683 at *3.

No such showing was made in this case. The meager evidence presented was that of a short exchange of pleasantries between a juror's husband and defense counsel, for which the Burchfields' counsel was mostly present. Again, while this Court is not condoning such communication between counsel and the spouse of a juror, we also cannot find that this communication creates reversible error absent a showing of prejudice. There is no evidence in the record to establish that improper information was exchanged, any information was conveyed to the jury, or the jury was even aware of this communication. This issue is also without merit.

## D. Defense Counsel "Changing" the Court's Ruling

The Burchfields posit that during a motion hearing conducted in this case, the trial court allowed defense counsel to modify its previous ruling regarding the presentation of proof at trial. A review of the transcript of that hearing, however, demonstrates that no such change actually occurred. Motion hearings typically involve oral arguments by opposing parties with questions and related comments from the judge, all resulting in the court's ruling. Such occurred at the motion hearing in question, with the trial court issuing a ruling following an adjudication of the motion. We discern no error in the trial court's actions.

E. Disparagement by the Court/Injudicious Conduct

The Burchfields also contend that the trial court exhibited numerous instances of bias by making improper comments in the presence of the jury. For example, the Burchfields claim that the judge made disparaging remarks about the Burchfields' counsel and the manner in which he presented certain proof. The Burchfields assert that the trial court's words, tone, and demeanor suggested that their counsel was less than competent and, at times, deceitful. The Burchfields state that the trial court also demonstrated hostility toward their witnesses.

In an action involving "sharp" exchanges between the judge and counsel occurring in front of the jury, *Goedel v. State*, 567 S.W.2d 180 (Tenn. Crim. App. 1978), the Criminal Court of Appeals explained:

> "A trial judge must be patient, yet firm, and not allow personal irritation to ruffle his judicial demeanor while trying a case." *Brooks v. State*, 187 Tenn. 67, 213 S.W.2d 7, 10 (1948). On the other hand, attorneys owe a corresponding duty to refrain from conduct which might create irritation in the trial of a case.

*Id*. at 183.

In *Mayo*, in addition to the issue regarding the limitation of the plaintiff's cross-examination of the defendant, a question was raised regarding whether the trial court erred by making potentially disparaging comments about the plaintiff's case in the presence of the jury. *See* 392 S.W.3d at 68. The trial court, when announcing its ruling limiting the time for cross-examination of the defendant, also stated, "Well, why did you waste two hours of our time playing questions that you're going to ask of her before?" *Id*. The plaintiff asserted on appeal that this comment about wasting time implied that the plaintiff's claims were a waste of the court's and the jury's time, and this Court agreed. *Id*. This Court stated, "[a]t a minimum, the Trial Court's comment, however unintentionally, implied that Plaintiff's counsel's questions and, therefore, also the witness's answers to those questions, were a

-15-

waste of time and unimportant. While this comment alone may not have risen to the level of reversible error, it was potentially prejudicial and, when considered together with the other errors as discussed in this Opinion, resulted in the Plaintiff being denied a fair trial." *Id.*

Similarly, in this case, the trial court made several disparaging comments toward and concerning the Burchfields' counsel and his presentation of the proof in front of the jury. While we acknowledge that the judge was often frustrated with the slow progression of Plaintiffs' presentation of the proof, we find that these instances of disparagement clearly left the jury with an unfavorable impression of the Burchfields' counsel which likely affected their opinion of the Burchfields' case. As in *Mayo*, we find that while the comments alone might not constitute reversible error, when considered with the other errors discussed herein, the trial court's comments resulted in the Burchfields being denied a fair trial.

### F. Failure to Give Cautionary Instruction

The Burchfields assert that the trial court indicated a need to give a cautionary instruction for the jury to disregard any impression they might have held about the court's view of the lawyers or the facts. The Burchfields contend that the court ultimately failed to provide such instruction. The Burchfields suggested in a motion filed during trial that any one of the following instructions would have been appropriate:

> The Court's remarks to counsel or about counsel or the parties must not be taken by you to indicate the Court's opinion of the facts you should find or the verdict you should return.
>
> . . .
>
> By my commentary to the lawyers if you think that I have expressed or even hinted at any opinion as to the facts in this case, you should disregard it.
>
> . . .
>
> If you think by my words or conduct you can interpret or infer any manifestation of my bias or prejudice to one side or the other, you should not do so.

Dr. Renfree argues that the trial court did give a proper instruction regarding this issue, as follows:

> I know that during the course of the trial there was concern conveyed to me

more than once on the part of the jury about the time that we were taking in this case and maybe some of the things that went on in court. You know, this admittedly was not the smoothest presented case we've ever had. The important thing to realize is that we have to ignore all such things as that and focus only on the two things that can have any influence on your verdict, and that is the actual evidence in the case and the rules of law as I will state them to you at the end of the closing arguments.

After closing arguments, the trial court also gave the following jury instruction:

So, finally, sitting here as judge in the case, I do not, can not, and would not assume, indicate, or suggest that any contested fact has or has not been proved or that any witness has or has not told the truth. Again, you, the jury, are the sole judges of the evidence, of the credibility of the witnesses, and the value to be given their testimony. As a jury you can have no prejudice, no sympathy, or allow anything but the law and the evidence to have any input upon your verdict. You must return the verdict with absolute fairness and impartiality according to the law and the evidence as you think justice and truth indicate.

The Burchfields contend that these instructions were insufficient and did not properly instruct the jury to disregard any impression they might have drawn from the court's remarks during trial.

As our Supreme Court has previously stated:

Reversal of a judgment is appropriate . . . only when the improper denial of a request for a special jury instruction has prejudiced the rights of the requesting party. It is not sufficient that refusal to grant the requested instruction may have affected the result; "[i]t must affirmatively appear that it did in fact do so." Tennessee courts view the jury charge in its entirety and consider the charge as a whole in order to determine whether the trial judge committed prejudicial error. It is not error to deny a requested instruction if its substance is covered in the general charge.

*Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 372 (Tenn. 2006) (internal citations omitted) (quoting *Otis*, 850 S.W.2d at 446).

Reviewing the jury instructions in their entirety, we find that the trial court adequately covered the substance of the special requested instruction in its jury charge. The jury was twice instructed to consider only the evidence and disregard all other influences. We find

no prejudicial error therein.

## G.  Undue Delay

The Burchfields complain that the trial court unduly delayed entering its decision on their post-trial motions.  The Burchfields admit, however, that the trial court apologized for the delay, explaining that it was due, at least in part, to a clerical error.  We find that this delay, although unfortunate, did not cause prejudice to the parties.  A trial court is not required to rule on such a motion within any particular time frame, although it is encouraged to act promptly.  *See Johnson v. Torrington Co.*, No. M2010-01924-COA-R3-CV, 2012 WL 2337615 at *9-10 (Tenn. Ct. App. June 19, 2012).

## H.  Unnecessary Expense

The Burchfields argue that a new trial is warranted because the trial court subjected them to unnecessary expense as punishment for exercising discovery rights regarding the defense experts.  This argument will be addressed below in the section regarding evidentiary rulings.

## I.  Removal of Documents from Dr. Workman's File

The Burchfields likewise argue that a new trial is warranted because defense counsel allegedly removed and lost documents from the medical file of Dr. Workman.  This argument will also be addressed below in the section regarding evidentiary rulings.

## VI.  Jury Instructions

### A.  *Res Ipsa Loquitor*

The Burchfields contend that the trial court erred in failing to instruct the jury regarding *res ipsa loquitor*.  Dr. Renfree does not dispute the fact that this jury instruction was not given, but posits that such charge was precluded because the Burchfields presented evidence of specific acts of negligence.  Upon our review of the record, the trial court appears to have instructed the jury in part by simply reading from Tennessee Code Annotated §29-26-115, the health care liability statute.  The court stopped short of reading the entire statute, however, omitting subsection (c), which provides:

> In a health care liability action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, that there shall be a rebuttable presumption that the defendant was negligent where it is

shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

The Burchfields argue that this subsection embodies medical *res ipsa loquitor*, which they raised in their pleadings. The Burchfields further contend that because such claim was never dismissed, the trial court should have instructed the jury regarding same. We disagree. The Burchfields' argument fails to apprehend that:

> *Res ipsa loquitur* is a rule of evidence, not a rule of law. It is intended to come to the aid of plaintiffs who have no direct evidence of a defendant's negligence, by providing a specialized vehicle for considering circumstantial evidence in negligence cases. It permits, but does not require, a fact-finder "to infer negligence from the circumstances of an injury."

*Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 525-26 (Tenn. Ct. App. 2002) (quoting *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 91 (Tenn. 1999)) (internal citations omitted).

In this case, there was no basis for the Burchfields to rely on *res ipsa loquitor* as there was direct evidence presented of Dr. Renfree's alleged negligence. *See Smith v. Mills*, No. E2010-01506-COA-R3-CV, 2011 WL 4553144 at *10 (Tenn. Ct. App. Oct. 4, 2011). The Burchfields' expert, Dr. Natelson, testified at length regarding multiple alleged deviations from the standard of care by Dr. Renfree during the surgical procedure, which Dr. Natelson opined were the cause of Mr. Burchfield's injury. Dr. Natelson opined that Dr. Renfree had cut Mr. Burchfield's median nerve as the result of negligence because Dr. Renfree, *inter alia*, (1) failed to take measurements, (2) failed to cut distal to proximal, (3) failed to visualize the nerve and ligament, and/or (4) performed the operation too quickly. Dr. Renfree and his experts agreed that the nerve was lacerated during the procedure, but stated that the laceration was not the result of negligence and that Dr. Renfree did not deviate from the standard of care. Thus, Dr. Renfree presented proof that the injury could have occurred in the absence of negligence, as Dr. Renfree and his experts testified that there was no negligence in this case.

As stated in *Smith*:

> the facts of this case do not lend themselves to proving negligence circumstantially through *res ipsa loquitur* because Patient has presented evidence at trial of specific acts of negligence. The doctrine of *res ipsa* permits the jury to infer negligence when there is a lack of evidence about what occurred – it is not a mechanism for having the jury ignore the evidence.

-19-

In this case, the parties do not dispute what actually caused Patient's injury – i.e. the inserting of a stitch into the bowel during the closing of the fascia. However, there was ample evidence in the record upon which the jury could find that this injury can occur even when the physician uses due care. Further, we cannot find that Patient established that this is the type of injury which ordinarily would not occur but for negligence. Thus, we affirm the judgment of the trial court that Patient failed to carry her burden of demonstrating that *res ipsa loquitur* applied in this case.

2011 WL 4553144 at *10.

Similarly, here, the Burchfields presented expert proof from which the jury could determine that Dr. Renfree was negligent, and Dr. Renfree presented expert proof to refute that testimony. As was the case in *Smith*, the jury was presented with a "battle of the experts" and had to decide which expert to believe. *See* 2011 WL 4553144 at *2. As such, there was no need for the court to instruct the jury regarding *res ipsa loquitor,* as the jury's verdict did not have to be based on circumstantial evidence.

### B. Instruction Regarding Informed Consent

The Burchfields assert that the trial court's reading of the Tennessee Pattern Jury Instructions - Civil 6.25,[3] regarding informed consent, was incorrect.[4] The Burchfields state that the trial court changed the phrase "alternative treatment or procedure" to "another treatment," which prejudiced the Burchfields because they had used the term "alternative" repeatedly during the presentation of their proof. Dr. Renfree posits that the trial court's instruction was substantially accurate, and that this is the appropriate standard by which it must be measured.

---

[3] This instruction provides, in pertinent part:

In determining how a reasonable patient would have acted under the circumstances, you should consider the testimony of the [patient][plaintiff], the plaintiff's [idiosyncrasies], [fears], [age], [medical condition], [and][religious beliefs], the presence or absence of alternative [procedures][treatments] and the potential risks and benefits thereof, and the impact of no [treatment][procedure] on plaintiff's health.

[4] As this Court has previously recognized, the Tennessee Pattern Jury Instructions, while helpful, do not constitute mandatory authority for the trial courts in their instruction of juries. *Cortazzo v. Blackburn*, 912 S.W.2d 735, 740 (Tenn. Ct. App. 1995).

-20-

As this Court has previously explained:

> [T]he soundness of every jury verdict rests on the fairness and accuracy of the trial court's instructions. Since the instructions are the sole source of the legal principles needed to guide the jury's deliberations, trial courts must give substantially accurate instructions concerning the law applicable to the matters at issue.
>
> Jury instructions need not be perfect in every detail. A single erroneous statement will not necessarily undermine otherwise proper instructions that, on the whole, fairly define the issues and do not mislead the jury.
>
> Instructions must be viewed as a whole, and the challenged portion of the instructions should be considered in light of its context. An erroneous instruction will not be considered reversible error if the trial court explains or corrects it in other portions of the charge.
>
> Juries are generally composed of persons who do not have formal legal training. Accordingly, a trial court's instructions should be couched in plain terms that lay persons can readily understand. It also follows that appellate courts must view the challenged instructions not through the practiced eyes of a judge but rather through the eyes of an average lay juror.

*Ladd by Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 94 (Tenn. Ct. App. 1996) (internal citations omitted).

Utilizing these guiding principles, we do not find the trial court's instruction to be erroneous. Viewing the instruction as a whole and in proper context, the substitution of "another treatment" for the phrase "alternative treatment or procedure" did not alter the instruction's meaning so as to render it substantially inaccurate. If anything, the trial court was simply employing a phrase that was more readily understandable. The trial court gave a substantially accurate instruction concerning the law applicable to this matter. This issue is without merit.

### C. Written Jury Instructions

The Burchfields argue that the trial court erred in refusing to provide the jury with written instructions. As claimed by the Burchfields, they requested the instructions be provided to the jury in writing, but the court denied their request and refused to allow them to present argument or authority regarding same. A review of the record demonstrates that

the Burchfields' request was not presented until after the jury had been charged and had retired to deliberate. In support of their position, the Burchfields rely upon Tennessee Rule of Civil Procedure 51.04, which states:

> If any party requests that the instructions given under Rule 51.03(2) be reduced to writing, or if the judge sua sponte elects to reduce the instructions to writing, the judge shall give the jury one or more copies of the written instructions, in their entirety, for use in the jury room during deliberations. After the deliberations are concluded, the written charge shall be returned to the judge.

Dr. Renfree contends that the Burchfields' request for written jury instructions was properly denied by the trial court due to its untimeliness. Dr. Renfree relies on the 2009 Advisory Commission Comments to the above rule in support of this argument. These Comments explain, *inter alia*, that, "[r]evised Rule 51.04 gives any party the right to require the jury charge to be reduced to writing and given to the jury. The new language incorporates T.C.A. § 20-9-501." Tennessee Code Annotated § 20-9-501 states:

> On the trial of all civil cases, it is the duty of the judge before whom the civil case is tried, at the request of either party, plaintiff or defendant, to reduce every word of the judge's charge to the jury to writing before it is delivered to the jury, and all subsequent instructions that may be asked for by the jury, or that may be given by the judge, shall, in like manner, be reduced to writing before being delivered to the jury.

Tennessee Rule of Civil Procedure 51.04 and Tennessee Code Annotated § 20-9-501 share an obvious similarity, which is the requirement that the trial court must reduce its charge to writing at the request of either party. There exists, however, a clear distinction - Tennessee Code Annotated § 20-9-501 expressly requires that this be accomplished before the charge is delivered to the jury, while Rule 51.04 includes no such requirement. Dr. Renfree asserts that this requirement is implied in Rule 51.04, however, because the rule's new language incorporates Tennessee Code Annotated § 20-9-501. We agree.

As our Supreme Court has explained:

> Although the rules of civil procedure are not statutes, the same rules of statutory construction apply in the interpretation of rules. Our goal is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. . . . In construing the rules of this Court, however, our goal is to ascertain and give effect to this

-22-

Court's intent in adopting its rules.

*Thomas v. Oldfield*, 279 S.W.3d 259, 261 (Tenn. 2009) (internal citations omitted).  Further, as this Court has elucidated, "it is the court's duty to reconcile provisions to give them a consistent meaning and harmonize the purposes of each.  In addition, an act should be construed in pari materia with all other acts on the same subject."  *First Tennessee Bank, N.A. v. Dougherty*, 963 S.W.2d 507, 509 (Tenn. Ct. App. 1997) (internal citations omitted).

Bearing these principles in mind, we recognize that Tennessee Code Annotated § 20-9-501 has been in existence for decades, requiring the trial court to reduce its charge to writing at the request of either party before the charge is read to the jury.  It has been construed by the courts of this state, however, as not requiring that the written version of the charge be physically provided to the jury.  *See Smith v. Steele*, 313 S.W.2d 495, 501 (Tenn. Ct. App. 1956).  In 2003, the Tennessee Supreme Court adopted Tennessee Rule of Civil Procedure 51.04, providing that "If the judge elects to reduce to writing the instructions given under Rule 51.03(2), the judge shall give the jury one or more copies of the written instructions, in their entirety, for use in the jury room during deliberations. . . ."  Thus, under the newly-adopted Rule 51.04, the judge was required to provide a copy of the written instructions to the jury <u>if</u> the judge elected to reduce the charge to writing.

The 2003 Advisory Commission Comments state in pertinent part:

New Rule 51.04 provides that *if* the judge is required to provide jurors with one or more copies of the written jury instructions for use during deliberations.  This provision is similar to Rule 30(c) of the Tennessee Rules of Criminal Procedure (requiring that the written instructions be provided to the jury), which has been part of Tennessee law for many years.  Because written jury instructions can markedly increase the jurors' understanding of the often complex law they must apply in the case, trial judges are encouraged to reduce their jury instructions to writing and, pursuant to this rule, to provide the jury with the written instructions.

Subsequently, in 2009, Rule 51.04 was amended to add a provision requiring the judge to reduce the charge to writing at the request of any party; the balance of Rule 51.04 was basically unchanged.  The 2009 Advisory Commission Comments state, "Revised Rule 51.04 gives any party the right to require the jury charge to be reduced to writing and given to the jury.  The new language incorporates T.C.A. § 20-9-501."

Reconciling the above provisions to afford them a consistent meaning and harmonize the purposes of each, we find that Rule 51.04 was not intended to expand the time limitation

imposed in Tennessee Code Annotated § 20-9-501, which expressly states that the appropriate time for requesting that the charge be put in writing is before the charge is delivered to the jury. The clear intent of Rule 51.04 was to encourage trial courts "to reduce their jury instructions to writing and, pursuant to this rule, to provide the jury with the written instructions." *See* 2003 Advisory Commission Comments. The proper time for making such a request to the trial court, as expressed in the statute, would still be before the charge is delivered to the jury. Tenn. Code Ann. §20-9-501. This is the only logical construction, as to allow such a request to be made after the jury has begun deliberations would result in undue delay and interruption of the deliberation process.

In the instant case, despite the Burchfields' contentions otherwise, the record reveals that no request was made for the jury instructions to be reduced to writing and given to the jury until after they had begun deliberating and thereafter sent out a question. The Burchfields assert that they "provided written instructions and moved for their acceptance" before deliberations began. The Burchfields did file requests for proposed jury instructions, but never asked for the jury instructions to be reduced to writing until after jury deliberations had begun. Based on the above authority, we find that such request was untimely.

### D. Remaining Issues Regarding Jury Instructions and Verdict Form

The Burchfields further contend that the trial court's failure to deliver some of the jury instructions requested by the Burchfields after "implying" that such instructions would be given is prejudicial error. The Burchfields rely principally on Tennessee Rule of Civil Procedure 51.01, which states in relevant part that a party may file written requests for jury instructions, and that the court "shall inform counsel of its proposed action upon their requests prior to their arguments to the jury." In this case, the Burchfields requested that the court adopt numerous sections of the Tennessee Pattern Jury Instructions - Civil in its charge to the jury. The Burchfields also submitted several requests for special instructions. During the hearing regarding jury instructions, the court separately reviewed the proposed special instructions, ruling upon them in turn. The court then announced:

> We have a number of things, which people tend to do, give me a bunch of numbers out of the jury charge book. You have to understand that the Court is limited in time just as you are, and many times we can't say everything that might possibly be related. We have to pick out the ones that are, and we just do the best we can on that.

No further discussion was held regarding the general jury charge. The Burchfields' counsel made no further requests or objections regarding same until after the jury was instructed. Thus, the trial court did not inform counsel of the precise instructions that would

be read.  The trial court also clearly did not imply, however, that all of the Burchfields' requested instructions would be given, contrary to the Burchfields' contention.

Our Supreme Court has opined that Tennessee Rule of Civil Procedure 51.01 creates a mandatory duty that the trial court inform counsel of its proposed action on counsel's requested jury instructions prior to argument, and that the trial court's failure to do so is error. *See Moredock v. McMurry*, 527 S.W.2d 462, 464 (Tenn. 1975).  The Court also held, however, that such error does not always warrant reversal.  *Id*. at 463.  As the Court explained:

> Whether this is reversible error would depend upon many factors, including the complexity of the issues, the number of special requests, their nature, purpose and merit, the necessity for them and, above all, the existence of a bona fide and particularized need for the guidance of counsel in advance of argument.

*Id.*

Noting that Tennessee Rule of Civil Procedure 51.01 was identical to Federal Rule of Civil Procedure 51 in this regard, the Supreme Court considered federal law on this question as persuasive authority.  *Id.*  The Court recognized that a majority of decisions from other jurisdictions, as well as the Sixth Circuit, "seem to require an affirmative showing of 'material prejudice' before awarding a new trial for failure of the trial court to announce which requests will be charged and which will be refused."  *Id.*

Our Supreme Court concluded that in the case before it, where counsel had submitted numerous special requests for instructions and the court had "declined to inform counsel of its proposed action on these requests and persisted in that refusal in the face of a specific motion for compliance with the rule," such error was reversible absent a showing of lack of prejudice.  *Id.*  The Court also held that "inadvertent noncompliance" with Rule 51.01 was not reversible error unless material prejudice was shown to exist.  *Id.*

In this case, the Burchfields filed a written request asking the trial court to charge several sections of the Tennessee Pattern Jury Instructions - Civil, and submitted separate requests for special instructions.  At the respective hearing, the court specifically reviewed and ruled upon the special instructions.  The trial judge essentially stated that he would select the applicable provisions of the Tennessee Pattern Jury Instructions - Civil to charge, reminding the Burchfields' counsel that he could not "say everything that might possibly be related."  The Burchfields did not object at the point of the court's announcement and did not ask the trial court for clarification or a specific ruling pursuant to Tennessee Rule of Civil Procedure 51.01 regarding the pattern jury instructions requested.

This case is distinguishable from *Moredock*, wherein the trial court "declined to inform counsel of its proposed action on these requests and persisted in that refusal in the face of a specific motion for compliance with the rule." 527 S.W.2d at 463. In the case at bar, the trial judge informed the Burchfields' counsel that he would choose and charge only those pattern instructions that he found to be relevant, a ruling to which the Burchfields' counsel did not object. Further, there was no specific motion made at any time before the charge was delivered pursuant to Tennessee Rule of Civil Procedure 51.01. Thus, the trial court's failure to comply with Tennessee Rule of Civil Procedure 51.01 does not appear to be a "conscious" and "affirmative" refusal, as was found to be true in *Moredock*. *Id*. at 464. Rather, it would appear to be inadvertent noncompliance, which raises the issue of whether the Burchfields have shown material prejudice in the trial court's noncompliance.

The Burchfields have asserted in this appeal that they were prejudiced because the trial court failed to instruct the jury regarding *res ipsa loquitor* and failed to properly read the instruction regarding informed consent. We have previously determined these issues to be without merit; thus, no prejudice has been shown. The Burchfields' remaining specific assertion regarding the jury instruction was that the trial court charged the jury pursuant to Tennessee Pattern Jury Instructions - Civil 6.14, entitled "Alternate Methods," without notice to the Burchfields that this instruction would be given. The Burchfields assert that they had not asked for this instruction because they had not alleged that utilizing the type of procedure Dr. Renfree performed on Mr. Burchfield was negligent. According to the Burchfields' contention, giving this instruction to the jury was "destined to confuse."

Dr. Renfree posits that the trial court's instruction was entirely appropriate, as there was testimony during the trial regarding different surgical techniques utilized in performing carpal tunnel release. Dr. Renfree states that one expert was asked to comment on the type of procedure Dr. Renfree used on Mr. Burchfield and whether it was "risky." Dr. Renfree also states that one of the Burchfields' claims was that Mr. Burchfield's injury would not have occurred if Dr. Renfree had performed an open, rather than endoscopic, surgery.

The trial court's instruction in this regard was as follows:

When it is shown in a case that there is more than one accepted method of treatment and no one of them is used exclusively and uniformly by all doctors in good standing, a doctor is not negligent simply for selecting an accepted method of treatment that later turns out to be unsuccessful. This is true even if the method is not one favored by certain other doctors. Before exercising any judgment, the doctor should inform himself by proper examination and proper investigation so as to ascertain the facts and circumstances on which any reasonable exercise of judgment may be made.

-26-

The court's instruction does appear to track Tennessee Pattern Jury Instructions - Civil 6.14, which reads:

> When there is more than one accepted method of diagnosis or treatment, and no one of them is used exclusively and uniformly by all physicians of good standing, a physician is not negligent for selecting an accepted method of diagnosis or treatment that later turns out to be unsuccessful. This is true even if the method is one not favored by certain other physicians.

Further, the comment following the pattern instruction states:

> In *Truan v. Smith*, 578 S.W.2d 73 (Tenn. 1979), the Court reaffirmed *Casenburg v. Lewis*, 163 Tenn. 163, 40 S.W.2d 1038 (1931) as a limitation on this rule: "Before exercising judgment the physician should inform himself by proper examination so as to ascertain the facts and circumstances on which a reasonable exercise of judgment might rest."

The trial judge has a duty to instruct the jury "accurately with respect to the theories of the parties and the legal principles applicable thereto." *Street v. Calvert*, 541 S.W.2d 576, 584 (Tenn. 1976). The instructions given by a trial court should: (1) be supported by the evidence, (2) embody a party's theory, and (3) be a correct statement of the law. *Hayes v. Gill*, 390 S.W.2d 213, 214 (Tenn. 1965). *See also Austin v. City of Memphis*, 684 S.W.2d 624, 637 (Tenn. Ct. App. 1984) (determining that the trial court's instruction was proper based on the defenses relied upon by defendant, and the facts introduced in support thereof).

One defense expert, Dr. Leibovic, was questioned extensively by the Burchfields' counsel about his opinion regarding the safety of endoscopic carpal tunnel surgery. Dr. Leibovic told the jury that there existed a controversy in the field regarding whether endoscopic surgery led to greater risk of cutting nerves and tendons. A review of the transcript clearly demonstrates that the Burchfields were calling into question the safety of the procedure performed on Mr. Burchfield. The Burchfields contend that the intended point of this line of questioning was simply to show that Mr. Burchfield should have been more adequately informed of the risks for the purposes of the informed consent claim. The Burchfields assert that they never claimed that the procedure performed on Mr. Burchfield was per se negligence; thus, the trial court was in error to give the above instruction. The substantial amount of testimony regarding alternate procedures, however, required the instruction given by the court, as Dr. Renfree was clearly placed in the position of having to defend the safety of the procedure he performed. Because the instruction (1) is supported by the evidence, (2) embodies Dr. Renfree's position, and (3) is a correct statement of the law, we find no error in the court's decision to give this instruction.

The Burchfields argue that they were still prejudiced because they had no notice that this instruction would be given and could not "work it into their closing." A review of the transcript reveals that the Burchfields' counsel did cover this in his closing argument, however, stating as follows:

> And let's go back to that alternatives thing. If you're having surgery, the conservative things aren't applicable anymore. In his deposition that you saw, before the polish and shine of court was upon him, Dr. Renfree specifically said the alternatives are - to endoscopic two-portal - open, endoscopic one-portal, and other surgical techniques. I didn't say that. He said it. One testimony in his deposition, another testimony in here when it gets hot and the steam starts coming up in the kitchen. But he said the alternatives were the other forms of surgery like open. Would you like to know about open if you had a carpal tunnel problem? Would you like to know the risks and benefits? Would you like to know of the great debate and that some surgeons won't even do it because they're concerned about the safety of the procedure? And we're not here to resolve that debate, but your verdict may have an impact on it to make that comment what doctors have to tell patients.

Clearly, the Burchfields' counsel adequately discussed alternate methods of surgery in his closing argument, and there is no question that they were also discussed as part of the proof. The Burchfields have shown no prejudice in not being made aware that the court would give the challenged instruction. Further, because the instruction was not erroneous, we find no prejudice to the Burchfields in having it read to the jury. We find the Burchfields' arguments regarding the jury instructions to be without merit.

The Burchfields also take issue with the trial court's failure to utilize a written verdict form. The Burchfields argue that this case presented complex issues and that the jury was hampered by not having a form. During its instruction of the jury, the trial court stated:

> When you come back into court I will ask your spokesperson these questions: "Have you reached a verdict?" If the answer is "yes," I will say, "With regard to Mr. Burchfield, do you find for the plaintiff or for the defendant?" If your answer is "for the defendant," I will ask each member of the jury, "Do you individually agree with that?" If your answer is "for the plaintiff," I will ask you, "What amount of damages do you find appropriate for the plaintiff?"

This is precisely the procedure that the court followed when the jury announced its verdict for Dr. Renfree. The Burchfields argue, however, that they were prejudiced by the court's failure to utilize a written verdict form.

Tennessee Rule of Civil Procedure 49.01 provides that the court "may" require the jury to make special written findings on each issue of fact, and Rule 49.02 provides that the court "may" submit written interrogatories to the jury. Absent from the language of Tennessee Rule of Civil Procedure 49 is that the court "must" employ a written verdict form. As this Court has previously recognized, "Rule 49.01 of the Tennessee Rules of Civil Procedure affords the trial court wide latitude to use a special verdict form as it deems appropriate." *Stanfield v. Neblett*, 339 S.W.3d 22, 40 (Tenn. Ct. App. 2010). The Burchfields have cited this Court to no authority which states that a court must use a written general verdict form. We discern no error in the trial court's failure to use a written verdict form in this case. As we have previously stated, "We have a duty to uphold a jury's verdict whenever possible. In doing so, we must give effect to the jury's intention, as long as that intention is permissible under the law and ascertainable from the phraseology of the verdict." *Grandstaff*, 36 S.W.3d at 497 (internal citations omitted). The jury's verdict was certainly ascertainable in the case at bar, even in the absence of a written verdict form.

## VII. Evidentiary Rulings

### A. Evidence that Dr. Renfree No Longer Performed Endoscopic Procedure

The Burchfields contend that the trial court erroneously ruled that the fact that Dr. Renfree no longer performed endoscopic carpal tunnel release for patients after May 8, 2008, was inadmissible. The Burchfields assert that Dr. Renfree maintained in his deposition that he routinely performed endoscopic carpal tunnel release, and that he believed the endoscopic procedure to be safer than open surgery. According to the Burchfields' theory, if open surgery is not as safe, as Dr. Renfree opined, the fact that he later stopped performing endoscopic surgery should not be considered a subsequent remedial measure pursuant to Tennessee Rule of Evidence 407, and should not have been deemed inadmissible. The Burchfields further contend that even if this is a subsequent remedial measure, the evidence is still admissible to impeach Dr. Renfree because he had stopped performing this procedure two years before his deposition was conducted.

Dr. Renfree asserts that it was not an abuse of discretion for the trial court to exclude evidence that he stopped performing endoscopic carpal tunnel release in 2008 and has since elected to perform only open surgery. Dr. Renfree posits that this is precisely the type of subsequent remedial measure contemplated by Tennessee Rule of Evidence 407, as the change was in response to the issues arising from Mr. Burchfield's procedure and this litigation. Dr. Renfree admits that this change was remedial and was intended to prevent further injury to patients. Dr. Renfree further states that, pursuant to Tennessee Rule of Evidence 407, this information can only be admitted for some purpose other than establishing negligence, such as impeachment. Dr. Renfree contends that the Burchfields' lack an ability

to impeach in this case, as Dr. Renfree testified consistently about his change in surgical technique to performing open surgeries.

Tennessee Rule of Evidence 407 provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent remedial measures is not admissible to prove strict liability, negligence, or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving controverted ownership, control, or feasibility of precautionary measures, or impeachment.

As our Supreme Court has elucidated:

The purpose of this evidentiary rule is to "encourage remedial measures in order to serve the public's interest in a safe environment." Neil P. Cohen et al., *Tennessee Law of Evidence* § 4.07[2] (5th ed. 2005). The word "subsequent" refers to events that occur after the events giving rise to the lawsuit. *Rothstein v. Orange Grove Ctr., Inc.*, 60 S.W.3d 807, 813 (Tenn. 2001). An action is "remedial" if it "chang[es] a situation, usually an unsafe property or product, to prevent the situation from causing further injury." *Id.* As with other evidentiary matters, we review a trial court's decision to admit or exclude evidence under Tennessee Rule of Evidence 407 under an abuse of discretion standard. *See State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *Id.* (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

*Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 87-88 (Tenn. 2008).

In this case, we find that the trial court erred in refusing to allow the Burchfields to present proof that Dr. Renfree had ceased performing endoscopic carpal tunnel release surgery in 2008, for the purpose of impeaching his testimony. Dr. Renfree's testimony during his deposition in 2010 lead to the conclusion that he then regularly performed endoscopic carpal tunnel release surgery. Dr. Renfree testified in pertinent part as follows:

If I was to see a patient in clinic, say Mr. Burchfield, initially you would start with a course of conservative measures; i.e., splinting and time. And then if

you get to a point where the patient is progressing, where they're having difficulty, they have weakness or increasing numbness and tingling, such as Larry was having on his right.

Then the treatment options are - if he wants to move forward, which we discussed - in my practice is discussing a carpal tunnel release. And the way I do them is endoscopic carpal tunnel.

. . .

I think that a physician, you know, a physician would see a patient and, as we talked about earlier, giving a diagnosis. And if the patient's having progressive problems you would discuss what the patient has, and then you would discuss how to make that – or how to treat that. And in this specific case I do an endoscopic carpal tunnel release.

Dr. Renfree further testified that while he did also perform open carpal tunnel release, he felt that the incidence of damage or laceration to the median nerve was higher with open carpal tunnel release.

At trial, questions posed to Dr. Renfree by his counsel were carefully couched in terms of what he would have done in 2007, when Mr. Burchfield's surgeries were performed. Dr. Renfree, however, did not disclose that he no longer performed endoscopic carpal tunnel release surgery in 2010. On cross-examination, the Burchfields' counsel attempted to ask Dr. Renfree whether endoscopic carpal tunnel release surgery was still a routine procedure in February 2010, which was the date of Dr. Renfree's deposition, but defense counsel objected and the trial court refused to allow any questions relating to any year other than 2007.

The Burchfields assert that their purpose behind this line of questioning was simply to impeach Dr. Renfree's deposition testimony on the basis that he still regularly performed the endoscopic procedure in 2010. We agree that such purpose for questioning was entirely proper. Contrary to Dr. Renfree's assertions, the deposition testimony lends the impression that Dr. Renfree regularly performed the endoscopic procedure at the time of his deposition. Further, this testimony was not properly barred as evidence of a subsequent remedial measure pursuant to Tennessee Rule of Evidence 407 because a surgery that Dr. Renfree characterized as more risky could not be deemed a remedial measure. The purpose behind a remedial measure clearly is to reduce risk and increase safety. *See Martin*, 271 S.W.3d at 87-88. The Burchfields should have been permitted to pursue this line of questioning both for the purpose of impeaching Dr. Renfree's deposition testimony, and because the testimony was not inadmissible as relating to a subsequent remedial measure.

-31-

## B. Dr. Calandruccio

Dr. Calandruccio was initially disclosed as an expert witness for the defense. His discovery deposition was taken on August 5, 2010. He was likewise listed as a witness on Dr. Renfree's witness list for trial. On October 6, 2010, Dr. Renfree withdrew Dr. Calundruccio from his list as an expert witness; the Burchfields assert that this is because during his deposition, Dr. Calundruccio provided information favorable to the Burchfields. The Burchfields claim that when they retained Dr. Calundruccio and he began assisting them, Dr. Renfree sent correspondence purporting to re-designate Dr. Calundruccio as a consulting expert for the defense. The Burchfields filed a subpoena and notice seeking to again depose Dr. Calundruccio, which the trial court quashed on Dr. Renfree's motion.

Dr. Renfree attached an affidavit from Dr. Calundruccio to the motion, wherein he stated:

> I was consulted as an expert witness by the defendants in this case and my discovery deposition was taken by plaintiff counsel on August 5, 2010. Sometime after that, I was advised that I would not be needed as a witness at trial. It was not clear to me that the defendants intended for me to remain as a consulting expert in this case. I now understand and agree to serve as a consulting expert to the defendants.
>
> I am aware that the plaintiffs have filed a notice to take my deposition on March 10, 2011. I do not wish to provide further expert testimony in this case and am not in agreement to be deposed. I am not a treating physician in this case.

In its order quashing the notice of deposition of Dr. Calundruccio, the court noted that because Dr. Calundruccio had expressed that he no longer desired to provide testimony, it would be inappropriate for the court to subpoena him to testify against his wishes.

The Burchfields assert that they should have been allowed to further depose Dr. Calundruccio, if not regarding his opinions, at least regarding his reasons for no longer wanting to testify. A careful review of the record discloses that the Burchfields did not ask the trial court if they could depose Dr. Calundruccio regarding his reasons for no longer wanting to testify. Rather, the Burchfields represented to the trial court that they wished to take Dr. Calundruccio's deposition for proof regarding his expert opinions in this case. This Court cannot rule on the propriety of deposing Dr. Calundruccio regarding his affidavit or his reasons for not testifying when that issue was never ruled upon by the trial court.

On the issue of whether the Burchfields could further depose Dr. Calundruccio regarding his expert opinion, they attempt to rely on this Court's opinion in *White v. Vanderbilt Univ.*, 21 S.W.3d 215 (Tenn. Ct. App. 1999), but we find such authority unavailing on this issue. In *White,* the question was whether a withdrawn expert's deposition testimony could be utilized at trial, not whether such expert could be further deposed. *Id.* at 225. The most important distinction between *White* and the case at bar, however, is that the expert in *White* never withdrew his agreement to testify as an expert as Dr. Calundruccio did in this action.

Applicable to this case is this Court's opinion in *Lewis v. Brooks*, 66 S.W.3d 883, 887 (Tenn. Ct. App. 2001), wherein it was explained that doctors who were party defendants in the case could not be compelled to answer questions in discovery regarding their opinions of the treatment given by other doctors. Determining that there were no Tennessee cases specifically on point, this Court relied upon a Pennsylvania case styled *Pennsylvania Co. v. City of Philadelphia*, 105 A. 630 (1918). In that case, expert real estate appraisers were hired by the plaintiff, but the plaintiff decided not to call them as witnesses because their appraisals were lower than desired. *Id.* at *630*. The defendant then subpoenaed them to testify. *Id.* The experts objected to testifying, citing their business relationship with plaintiff, and the trial court sustained the objection, "'on the ground that the witness still maintains a confidential relation' with plaintiff." *Id.*

The appellate court affirmed, stating that it was unnecessary to decide whether the lower court's reasoning was sound because the witnesses themselves objected to being required to testify as experts:

The process of the courts may always be invoked to require witnesses to appear and testify to any facts within their knowledge; but no private litigant has a right to ask them to go beyond that. The state or the United States may call upon her citizens to testify as experts in matters affecting the common weal, but that is because of the duty which the citizen owes to his government, and is an exercise of its sovereign power. So, also, where the state or the United States, in her sovereign capacity, charges the citizen with crime, she may, if need be, lend her power in that regard to the accused; for she is vitally interested, as such sovereign, that public justice shall be vindicated within her borders. Perhaps, also, under like circumstances, she may also lend her power in civil cases. But the private litigant has no more right to compel a citizen to give up the product of his brain, than he has to compel the giving up of material things. In each case it is a matter of bargain, which, as ever, it takes two to make, and to make unconstrained.

-33-

*Id.*

Similarly, here, we hold that the trial court was correct in its determination that Dr. Calundruccio could not be compelled to provide testimony as an expert against his will. Where the expert's agreement to serve in such capacity has been withdrawn, there is no authority for compelling the expert to "give up the product of his brain." *See id.* This issue is without merit.

Regarding the issue of whether the trial court properly barred the use of Dr. Calundruccio's deposition at trial, however, we do find this Court's opinion in *White* to be controlling. *See* 21 S.W.3d at 225-230. In *White*, the defendant physicians named an expert who was subsequently deposed by the plaintiffs. *Id.* During his deposition, the expert stated an opinion that the defendants deviated from the standard of care in certain respects. *Id.* Defendants elected to take a video-taped deposition of the expert thereafter, and the expert again stated that the defendants deviated from the standard of care. *Id.* Both the plaintiffs and the defendants named this expert as a potential witness on their witness list for trial. *Id.*

When the trial began, the defendants filed motions in limine seeking to prevent the plaintiffs from utilizing this expert's testimony by reading from or alluding to his depositions. *See* 21 S.W.3d at 222. The trial court ruled that the plaintiffs could not use the expert's deposition for rebuttal if the defendants did not call him as a witness. *Id.* The trial court stated that, "unless that expert is going to be called to testify at trial, a party has the right to designate . . . [him] as a consultant at any point. And once [the defendants] elect not to utilize . . . [the expert] at trial, the other party may not . . . discover the opinions. And if they have been discovered, if there have been depositions, [the other party] . . . may not utilize those depositions at trial." *Id.*

This Court reviewed the issue of whether the plaintiffs should have been allowed to use the expert's deposition testimony at trial, and found that the first inquiry was whether Tennessee Rule of Civil Procedure 32 permitted the use of the deposition. *Id.* at 226. In *White*, this Court found that it was permissible to use the expert's deposition under Rule 32 because the expert lived out of state, and because his deposition was taken by the defendants, who retained him, to preserve his testimony. *Id.* This Court specifically noted that it would be inappropriate to utilize the deposition at trial if it was "the discovery deposition of an adversary's expert," due to Rule 32.01(3), which states that such depositions may only be used to impeach the deponent. *Id.*

Employing the same analysis in the case at bar, it is clear the Dr. Calundruccio's deposition was properly barred from use at trial because it was taken by the Burchfields

and was the "discovery deposition of an adversary's expert." *See* 21 S.W.3d at 226. As such, its use is not permitted pursuant to Tennessee Rule of Civil Procedure 32.01(3). We discern no error in the trial court's determination that the deposition could not be utilized at trial.

## C. Psychological Testing

The Burchfields complain that they, and ultimately, the jury, were deprived of the ability to review the tests and raw data relied upon by defense experts Dr. Spica and Dr. Alexander when forming their opinions that Mr. Burchfield demonstrated malingering and a lack of credibility regarding his injury. The Burchfields also claim unfairness in being required to incur significant additional expense because the trial court required that the testing questions and data be delivered only to another psychologist.

Dr. Renfree explains that Dr. Spica voiced a concern that he could not ethically disclose the raw testing materials because they involved sensitive proprietary information that could compromise the efficacy of the tests if placed in the public domain. This concern was conveyed to the trial court, with the court ruling that Dr. Spica would bring his entire file to his deposition for review by the Burchfields. Dr. Spica allowed the Burchfields to review his file during the deposition but refused to allow the testing materials to be removed and copied. He stated that ethically he could only release those materials to another psychologist. Thus, at a subsequent motion hearing, this issue and the fact that the Burchfields had hired a psychologist to receive the information were presented to the trial court. The court expressed approval of this arrangement, ordering that Dr. Spica would provide the information to the Burchfields' expert.

The Burchfields presented no additional objection that the testing information was not provided to their psychologist. In fact, contrary to the Burchfields' assertions on appeal, it is clear they maintained access to the raw testing materials as was evidenced by their referral to and use of the evidence at trial. Further, a review of the trial transcript reveals that this testing information was also provided to the jury. The Burchfields' contentions of prejudice regarding an alleged lack of this testing information are without merit.

The Burchfields also complain that they were required to bear the expense of hiring another expert (a licensed psychologist) in order to obtain the relevant test information from Dr. Spica. As noted above, the record reveals that this appears to have been a solution suggested by Dr. Spica at his deposition, to which the Burchfields agreed, despite voicing their objection to this proposal. Contrary to the Burchfields' assertions, this was not a requirement imposed by the trial court, although the court did approve the parties' agreement in an effort to resolve this discovery dispute.

The Burchfields further assert that the trial court disparaged Tennessee Supreme Court case law and failed to properly allow the Burchfields to challenge the opinions of Drs. Spica and Alexander. We find no merit to these contentions. The Burchfields presented the testimony of their own expert, a neuropsychiatrist, who testified regarding Mr. Burchfield's credibility and lack of malingering. The Burchfields were allowed ample opportunity to challenge the opinions of Drs. Spica and Alexander, both in their cross-examination of these witnesses and their use of other experts. The Burchfields also argue that the trial court disparately ruled on evidentiary and testimonial issues in a manner disproportionately favorable to Dr. Renfree. We have reviewed the Burchfields' allegations and find no merit to their contentions.

Lastly, the Burchfields appear to argue that the trial court should have excluded the opinions of Drs. Spica and Alexander as scientifically unreliable. As explained by our Supreme Court:

> In general, questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court. The trial court's ruling in this regard may only be overturned if the discretion is arbitrarily exercised or abused. The specific rules of evidence that govern the issue of admissibility of scientific proof in Tennessee are Tenn. R. Evid. 702 and 703. The former provides:
>
>> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.
>
> And Tenn. R. Evid. 703 states:
>
>> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

*McDaniel*, 955 S.W.2d at 263-64 (internal citations omitted).

A trial court should "admit the testimony of a competent expert unless the party opposing the expert's testimony shows that it will not substantially assist the trier of fact or if the facts or data on which the opinion is based are not trustworthy pursuant to Rules 702 and 703." *Shipley v. Williams*, 350 S.W.3d 527, 551 (Tenn. 2011). As the Supreme Court further explained, "The trial court is not to decide how much weight is to be given to the witness's testimony. Once the minimum requirements are met, any questions the trial court may have about the extent of the witness's knowledge, skill, experience, training, or education pertain only to the weight of the testimony, not to its admissibility." *Id.*

In this case, the Burchfields failed to demonstrate that the facts or data on which the opinions of Drs. Spica and Alexander were based were untrustworthy. The Burchfields likewise did not demonstrate that these experts' testimony would not substantially assist the trier of fact. As such, the trial court did not abuse its discretion in allowing Drs. Spica and Alexander to testify. Any questions regarding the weight to be given their testimony were properly addressed by the jury.

On a related matter, the Burchfields assert that defense counsel removed portions of Dr. Workman's written records regarding Mr. Burchfield during defense counsel's cross-examination of Dr. Workman, and that those records were never returned. A review of the transcript evinces that defense counsel did retrieve Dr. Workman's records during cross-examination, then purported to return them. Dr. Workman objected on the record that his entire file was not returned. Defense counsel stated that he would return the subject documents as needed. The record reflects no further reference to those documents.

The Burchfields filed a motion regarding these missing documents post-trial, but the trial court failed to make any specific ruling. Dr. Renfree filed a response stating that no documents were taken. The Burchfields responded by filing an affidavit from Dr. Workman, wherein he stated that he observed defense counsel remove documents from his file during trial. Dr. Workman further identified the specific documents that were removed and are now missing. We consider this to be a significant allegation. This Court cannot address the matter in the first instance inasmuch as the trial court made no ruling on the motion; however, upon remand, the trial court is directed to address this issue of missing documents expeditiously, before this matter is retried.

D. *Hunter v. Ura* and Speculative Causes

The Burchfields argue that the only admissible evidence of injury causation in this case is that Mr. Burchfield's median nerve was cut with the surgeon's knife. The Burchfields assert that evidence of other causes of the laceration is speculative and should have been excluded pursuant to *Hunter v. Ura,* 163 S.W.3d 686, 702 (Tenn. 2005) (wherein the

Supreme Court affirmed trial court's decision to exclude testimony of expert witness who characterized alternate cause of death as "possibility", concluding such testimony was speculative and would not substantially assist trier of fact). Dr. Renfree counters that the Burchfields' counsel elicited these responses from the experts and thus should not be heard to complain.

During cross-examination of Dr. Leibovic, the Burchfields' counsel asked, "Doctor, the most likely cause of the cut is the knife, isn't it?" Dr. Leibovic then responded that while the use of the knife was a possibility, it was also possible that the median nerve could have been cut by one of the other surgical instruments, stating, "I don't know that we can ever in fact know what cut this nerve." The Burchfields' counsel persisted in his questioning regarding whether the knife was the most likely instrumentality, to which Dr. Leibovic again responded that it could have been any of the other surgical instruments as well, and that there was no way to tell for certain.

Dr. Lorio was similarly pressed on cross-examination, testifying that any of the surgical instruments could have severed the nerve. He testified that "failure to obey the landmarks could explain this laceration," and further that "advancing instrumentation in the wrong plane could explain this laceration." Dr. Lorio admitted that any of these explanations were possibilities, after being asked these questions by the Burchfields' counsel. Regardless, the experts maintained that Dr. Renfree acted within the standard of care at all times when performing this procedure. As Dr. Renfree points out, "a party cannot generally be heard to complain about testimony elicited by his own cross-examination of an opposing party or a witness." *Palanki v. Vanderbilt Univ.*, 215 S.W.3d 380, 392 (Tenn. Ct. App. 2006). We find that the Burchfields elicited the testimony which they now argue was inadmissible, and as such, cannot complain of error.

E. Dr. Lorio's Testimony

The Burchfields assert that Dr. Lorio should not have been allowed to testify because "he demonstrated a lack of judgment such that the court should not have trusted him to substantially assist the jury to understand the evidence or determine any fact at issue under Tenn. R. Evid. 702." In support, the Burchfields state that Dr. Lorio cursed and employed an ethnic slur during his deposition, and that he also charged an exorbitant fee for his testimony at trial with little or no explanation. The Burchfields surmise that such charge was an "apparent impermissible contingency fee."

As earlier stated, "questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court. The trial court's ruling in this regard may only be overturned if the discretion is arbitrarily exercised or

-38-

abused." *McDaniel*, 955 S.W.2d at 263. A trial court should "admit the testimony of a competent expert unless the party opposing the expert's testimony shows that it will not substantially assist the trier of fact or if the facts or data on which the opinion is based are not trustworthy pursuant to Rules 702 and 703." *Shipley*, 350 S.W.3d at 551. Despite the Burchfields' characterization of Dr. Lorio's deposition testimony, there was no showing that Dr. Lorio's testimony would not substantially assist the jury or that the facts or data on which his opinion was based were not trustworthy. Further, as the Burchfields admit, Dr. Lorio's invoice was sent after the trial was concluded.[5] We find no abuse of discretion in the trial court's ruling that Dr. Lorio's testimony was admissible.

## VIII. Discovery Issues

The Burchfields next contend that the trial court was "hostile" toward their discovery efforts and improperly quashed many legitimate discovery requests. The Burchfields state that Dr. Renfree lacked standing to seek the court's order in quashing subpoenas issued to third parties, such as the hospitals where Dr. Renfree performed surgery. The Burchfields also assert that the trial court improperly refused to allow the Burchfields to file additional written discovery requests of Dr. Renfree after ruling that he could not be further deposed. The Burchfields further argue that, by contrast, the trial court improperly failed to exclude Dr. Renfree's supplemental discovery response which contained a booklet allegedly provided to patients by Dr. Renfree's nurse, when the supplement was filed a few months following Dr. Renfree's deposition.

Dr. Renfree contends that the Burchfields engaged in a course of abusive and unduly burdensome discovery requests which were properly limited by the trial court. Dr. Renfree states that as the litigation progressed, "it became clear that no amount of discovery would ever satisfy the Burchfields," as the Burchfields filed written discovery requests that exceeded the limits set by local rules and their counsel deposed Dr. Renfree for almost twelve hours.

Tennessee Rule of Civil Procedure 26.02 (1) provides:

The frequency or extent of use of the discovery methods set forth in subdivision 26.01 and this subdivision shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome or less expensive; (ii) the party seeking discovery has had

---

[5] There is nothing in the record to show that Dr. Lorio charged a contingency fee as the Burchfields suggest.

ample opportunity by discovery in the action to obtain the information sought; or, (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation. The court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision 26.03.

Our Supreme Court has further explained:

Although the Tennessee Rules of Civil Procedure do not provide a sanction for abuse of the discovery process, trial judges have the authority to take such action as is necessary to prevent discovery abuse. Trial courts have wide discretion to determine the appropriate sanction to be imposed. Such a discretionary decision will be set aside on appeal only when "the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." Appellate courts should allow discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness.

*Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004) (internal citations omitted).

We find no abuse of the trial court's discretion in the limitations placed on discovery in this case. As the trial court found, the discovery requests that were quashed were unduly burdensome and often duplicative. For example, the request that hospitals and surgery centers search years' worth of records and provide copies of every consent form signed by Dr. Renfree regarding carpal tunnel surgery on any patient is unreasonable at best. Further, the trial court had the authority pursuant to Tennessee Rule of Civil Procedure 26.02 (1) to "act on its own initiative" in limiting this burdensome discovery. We do not find that the trial court "misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence" in the manner in which discovery was limited in this case. *See Mercer*, 134 S.W.3d at 133.

The Burchfields also assert that the trial court should have excluded Dr. Renfree's supplemental discovery response, which identified a booklet allegedly provided to Mr. Burchfield by Robin Jenks, R.N. The Burchfields state that Dr. Renfree originally answered their written discovery on December 22, 2008, and therein failed to disclose the existence of this booklet or Ms. Jenks as a known witness of events. The Burchfields state that Dr. Renfree was deposed on February 22, 2010, and never testified regarding this booklet or Ms. Jenks. The booklet and Ms. Jenks' knowledge regarding same were not disclosed until a

supplemental response was filed on May 18, 2010. The Burchfields insist that it was error for the trial court to have failed to exclude this evidence and/or for the trial court to have refused the Burchfields' request to depose Dr. Renfree again after this evidence was disclosed.

Again, we find no abuse of discretion in the trial court's decision regarding this discovery issue. As stated above, this Court "should allow discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness." *See Mercer*, 134 S.W.3d at 133. We discern no error in the trial court's rulings regarding discovery matters.

## IX. Verdict Against Weight of Evidence

Because we have previously determined that reversible error exists mandating a new trial, an analysis of this issue is pretermitted.

## X. Directed Verdicts Regarding Battery, Fraud/Misrepresentation, and Punitive Damages

At the conclusion of the Burchfields' case-in-chief, the trial court granted Dr. Renfree's motion for directed verdict on the battery, fraud, and misrepresentation claims presented by the Burchfields. As Dr. Renfree concedes, a motion for directed verdict should only be granted when the evidence is insufficient to create an issue for the jury to decide or when the evidence is susceptible to only one conclusion. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 390 (Tenn. Ct. App. 2006). This Court further stated:

> The rule for determining a motion for directed verdict requires the trial judge and the appellate courts to look to all of the evidence, take the strongest, legitimate view of the evidence in favor of the opponent of the motion and allow all reasonable inferences from it in his favor. The court must disregard all countervailing evidence and if there is then any dispute as to any material, determinative evidence or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied.

*Id.* (Internal citations omitted). "The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Id.* (quoting *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). *See also Biscan v. Brown*, 160 S.W.3d 462, 470 (Tenn. 2005).

The Burchfields raised claims of both lack of informed consent and medical battery in this case. This Court has previously explained the distinction between these claims as follows:

A medical battery occurs when a physician performs an unauthorized procedure. Typically, a medical battery involves a physician performing a procedure that the patient did not know the physician was going to perform or a physician performing a procedure on a part of the body other than the one described to the patient. The controlling factual issues in these cases are whether the patient knew the physician was going to perform the procedure and whether the patient authorized the physician to perform it. According to the Tennessee Supreme Court, if the answer to either of these questions is no, a medical battery has been committed. Because the answers to these questions focus on the patient's knowledge and awareness, patients pursuing a medical battery claim need not present expert evidence to support their claim.

In contrast, a lack of informed consent violation occurs when the patient is aware that a procedure is going to be performed but is unaware of the potential risks associated with the procedure. The tort does not relate to the manner in which the procedure was performed, but rather to the manner in which the physician obtained the patient's consent to perform the procedure. These claims are part of the medical malpractice statutes. *See* Tenn. Code Ann. § 29-26-118 (1980). Accordingly, patients seeking damages for lack of informed consent must prove that the physician's conduct fell below the applicable standard of care and that reasonably prudent persons in the patient's position would not have consented to the procedure if they had been suitably informed of the risks, benefits, and alternatives.

The inquiry in lack of informed consent cases is whether the physician provided the patient sufficient information to enable the patient to make an intelligent and informed decision either to refuse or consent to the procedure. To prove that the information was insufficient, a patient must present evidence that his or her physician failed to disclose information about the risks of the proposed procedure that a reasonable physician would have disclosed under similar circumstances. This evidence must take the form of expert testimony because it is clearly beyond the common knowledge of laypersons.

*Church v. Perales*, 39 S.W.3d 149, 159-60 (Tenn. Ct. App. 2000) (other internal citations omitted). Regarding a medical battery claim, this Court went on to explain that a signed consent form gives rise to a presumption that the patient authorized the procedure "in the

absence of proof of misrepresentation, inadequate disclosure, forgery, or lack of capacity." *Id.* at 161.

This Court has previously found that a plaintiff stated a claim for medical battery sufficient to survive summary judgment wherein his agreement to sign a consent form was based on the physician's alleged factual misrepresentation that he had spoken to the plaintiff's treating physician and the treating physician agreed that the procedure should be performed. *Holt v. Alexander,* No. W2003-02541-COA-R3-CV, 2005 WL 94370 (Tenn. Ct. App. Jan. 13, 2005). In its analysis of this issue, this Court explained:

> Dr. Alexander correctly asserts that a signed consent form shows that the plaintiff was aware that the surgery was going to take place. The signed consent form, however, raises only a presumption of consent to surgery. A claim for medical battery can be established if it is shown that the physician intentionally or recklessly misrepresented a material fact in order to obtain the patient's signature on the consent form, thus vitiating the patient's consent. For example, in *Petzelt v. Tewes*, 581 S.E.2d 345, 347 (Ga. Ct. App. 2003), the plaintiff consented to a "denervation" procedure to alleviate pain in her back, based on the defendant physician's representation that the patient's orthopedic surgeon was "fully aware" of everything the defendant physician was doing. In reality, the defendant physician had dictated notes indicating a "c.c." to the orthopedic surgeon, but had no idea whether the orthopedic surgeon had either received or reviewed the notes. It turned out that the orthopedic surgeon was unaware of the defendant physician's course of treatment of the plaintiff. The appellate court found that the jury could conclude from the evidence that the defendant physician had misrepresented to the plaintiff that the orthopedic surgeon had acquiesced to her treatment plan for the plaintiff. Under these circumstances, the plaintiff's consent to the medical procedure "may be vitiated." *Id.; see also Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 440 (Ariz.2003) (en banc) (holding that although consent to injection was given, consent was obtained by misrepresentation and, thus, was invalid).

> In the instant case, Holt submitted his own testimony that Dr. Alexander represented to him that he had spoken to Dr. Meriwether before the surgery and that Dr. Meriwether approved of the procedure. In fact, Dr. Alexander admits he did not talk with Dr. Meriwether, and he later discovered that Dr. Meriwether did not order the procedure. This claim is not one of lack of informed consent, where the physician "failed to inform [the patient] of any or all risks or aspects associated with a procedure." According to the Restatement of Torts:

If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.

Restatement 2d Torts 892B(2) (1979), quoted in *Duncan*, 70 P.2d at 440. Under comment h of the Restatement, a patient adversely affected by the misrepresentation may either bring an action for misrepresentation or "treat the consent as invalid and maintain any tort action open to him in the absence of consent." Where a signed consent form raises the presumption of valid consent, and the plaintiff claims that his consent was vitiated by "misrepresentation, inadequate disclosure, forgery, or lack of capacity," a claim for medical battery is stated and expert testimony is not necessary to prove such a claim.

*Holt*, 2005 WL 94370 at *6 (Tenn. Ct. App. Jan. 13, 2005) (other internal citations omitted).

In the case at bar, the Burchfields allege that the consent forms signed by Mr. Burchfield are fraudulent and/or contain material misrepresentations because said forms state that Dr. Renfree had discussed "anesthetics" with Mr. Burchfield, as well as "alternatives" to endoscopic carpal tunnel release surgery and the risks and benefits of those alternatives. The Burchfields contend that Dr. Renfree did not discuss such matters with Mr. Burchfield; thus, Mr. Burchfield's consent was "vitiated" by this alleged fraud/misrepresentation. Dr. Renfree contends that he did discuss with Mr. Burchfield that he would be given anesthesia as well as the type of anesthesia that would be used. Dr. Renfree further contends that he discussed "alternatives" to the endoscopic carpal tunnel release procedure with Mr. Burchfield many times, and that they had, in fact, attempted a number of conservative treatment options prior to the surgery.

Mr. Burchfield testified that when he first consulted Dr. Renfree, he was experiencing pain in his hands and left elbow. Dr. Renfree initially suggested he try wearing splints. Mr. Burchfield testified that the splints helped while he was wearing them, but did not completely alleviate the pain. When Mr. Burchfield returned to see Dr. Renfree, he was given samples of medication and a test was ordered. Mr. Burchfield testified that upon his return to see Dr. Renfree a few weeks later, surgery on his left arm was first discussed. Mr. Burchfield testified that he had a subsequent visit with Dr. Renfree during which they discussed the surgery before he decided to have it done. Mr. Burchfield testified that Dr. Renfree told him he performed the surgery using a scope because such procedure caused less scarring, had less

-44-

chance of infection, and Mr. Burchfield would return to work more quickly. Mr. Burchfield testified that he asked Dr. Renfree about open surgery, which he referred to as "the old surgery," that his wife and mother had done years before. Dr. Renfree told him that he probably wouldn't find anyone to perform that type of surgery, as the endoscopic procedure was "the thing that was going on right now." Mr. Burchfield understood from this conversation that the surgery his wife and mother had was "a thing of the past." Mr. Burchfield testified that if open surgery had been offered to him, he would have chosen that alternative.

Mr. Burchfield admitted signing the informed consent form before his first surgery, and he stated that he and Dr. Renfree "talked about some of the risks and benefits, but I didn't know them all." Mr. Burchfield testified that the risks and benefits of the surgery were discussed on two separate occasions. Mr. Burchfield testified that the surgery on his left arm was successful. He returned to see Dr. Renfree about three weeks later. As his left elbow was still tender, Dr. Renfree referred him to physical therapy. Mr. Burchfield saw Dr. Renfree again approximately one month later, and discussed having the surgery on his right arm. Mr. Burchfield again admitted that Dr. Renfree discussed the risks and benefits of the surgery with him, but he stated that Dr. Renfree did not specifically mention the possibility of damage to the median nerve or other surgical procedures. Mr. Burchfield testified that Dr. Renfree told him, "We'll just do it like we did the other one." Mr. Burchfield signed a second consent form. Mr. Burchfield also signed anesthesia consent forms, and he testified that Dr. Renfree told him he would be given anesthesia, but did not discuss any specifics. Mr. Burchfield's testimony regarding these events was corroborated by his wife.

Viewing the proof in the light most favorable to the Burchfields, it is clear that Dr. Renfree discussed and attempted alternatives to surgery with Mr. Burchfield before Mr. Burchfield signed the informed consent form. It is also clear that Mr. Burchfield knew and understood that anesthesia would be used for the procedure. As the trial court correctly found, Mr. Burchfield's claims regarding types and availability of alternative procedures, the risks of the procedures, and other related matters, sound in lack of informed consent rather than medical battery. Mr. Burchfield signed a consent form for each procedure, which raises a presumption that he authorized the procedure "in the absence of proof of misrepresentation, inadequate disclosure, forgery, or lack of capacity." *Church,* 39 S.W.3d at 161. Upon a careful review of the record, we do not find proof of any such misrepresentation or fraud that would vitiate Mr. Burchfield's signed consent form in this case. As such, we affirm the trial court's grant of a directed verdict on the Burchfields' medical battery claims, along with the underlying claims of fraud and misrepresentation, as well as the accompanying claim for punitive damages.

-45-

## XI.  Judgment as Matter of Law Regarding Battery and Negligence

The Burchfields assert that they are entitled to partial summary judgment or judgment as a matter of law on their claim of medical battery.  We disagree.  Having found no fraud or misrepresentation that would vitiate Mr. Burchfield's consent form, there is no basis for finding that a medical battery occurred.

The Burchfields also assert that they are entitled to partial summary judgment or judgment as a matter of law on their claim of negligence pursuant to the health care liability act.  A review of the record demonstrates that the Burchfields never made such a motion before the trial court, however, thereby precluding our ability to rule on this issue.

## XII.  Motion to Supplement the Record

Prior to oral argument, the Burchfields filed a Motion asking this Court to allow them to supplement the record with an audio recording of a telephonic message left for their counsel by appellee's counsel.  We hereby grant the Motion as it was unopposed by Dr. Renfree.  We have considered the additional information but find that the audio recording has no bearing on the outcome of this appeal.

## XIII.  Conclusion

The jury's verdict is vacated, as there was reversible error in the administration of the trial.  The case is remanded for further proceedings consistent with this opinion.  Costs on appeal are assessed to the Appellee, Dr. Timothy Renfree.

_____
THOMAS R. FRIERSON, II, JUDGE